UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDWIN FORREST LUDWIG IV,<br><br>Defendant. | No. 2:14-cr-00043-KJM-KJN-1<br><br><br><br>ORDER |

   Defendant, through counsel, moves for an order reducing his sentence to time served under 18 U.S.C. § 3582(c). Defendant makes this motion in light of the increased risks to health that the coronavirus ("COVID-19") poses to incarcerated persons and to him in particular. Mot., ECF No. 460. The government opposes, Opp'n, ECF No. 471, at 12, and defendant has replied, Reply, ECF No. 477. For the following reasons, the court GRANTS defendant's motion.

I. BACKGROUND

   On February 20, 2014, a grand jury returned a ten-count indictment charging seven people, including defendant Edwin Forrest Ludwig IV, with, among other things, conspiracy to defraud the United States in violation of 18 U.S.C. §§ 286, 287. Indictment, ECF No. 1. On April 22, 2015, defendant, by way of a written plea agreement, pled guilty to conspiracy to defraud the United States with false, fictitious or fraudulent claims in violation of

/////

1

18 U.S.C. § 286 (Count 1) and false claims against the United States in violation of 18 U.S.C. § 287 (Counts 2 and 8).  Mins. of Change of Plea Hr'g, ECF No. 127.

        A.        Timing of Sentence

On July 8, 2015, relying on the 2014 Guidelines Manual, Mot. at 11, this court sentenced defendant to 84 months on Count 1 and 60 months on Counts 2 and 8, all to be served concurrently for a total term of 84 months imprisonment; supervised release for a term of 36 months on Counts 1, 2 and 8, to be served concurrently for a total term of 36 months; and restitution in the amount of $219,984.00.  Mins. of Sentencing, ECF No. 145.  At sentencing, the government did not ask for the court to impose the high end of the guidelines range, and the court noted defendant "has accepted responsibility in a very meaningful way."  Aug. 6 Hr'g Tr., ECF No. 148, at 12:17–19, 13:4.

On November 1, 2015, the 2015 U.S. Sentencing Guidelines Manual went into effect and included a lower advisory Guidelines range for defendant's guilty plea.  Mot. at 10–11 (citing 2015 United States Sentencing Guidelines Manual); *see* Reply at 9 (citing Amendments to the Sentencing Guidelines)[1]; *see also United States v. Williams*, No. CR 12-20272, 2018 WL 4181443, at *1 (E.D. Mich. Aug. 31, 2018) (noting Sentencing Commission's Policy Statement effective November 1, 2015, as result of amendment 791, altered amount-of-loss table in Guideline § 2B1.1 that applies to fraud crimes).

On July 1, 2016, defendant filed a § 2255 motion to vacate, set aside, or correct his sentence, claiming ineffective assistance of counsel for failure to advise him of the effect of Amendment 791.  Mot. Reduce Sent., ECF No. 206.  On June 25, 2020, the magistrate judge issued Findings and Recommendations, recommending that this court deny defendant's § 2255 motion.  F&Rs, ECF No. 470, at 16 (recommending the court find history of events refutes defendant's claim his attorney never advised him of Amendment 791's changes).  Defendant has objected to the magistrate judge's findings and recommendations, ECF No. 479; this court will resolve the § 2255 motion separately.

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf.

B.    Defendant's Medical Conditions

Defendant is 39 years old, Opp'n, ECF No. 471, at 12, and has been incarcerated at FCI Beaumont Low since November 25, 2015, where at the time defendant filed his pending motion five inmates and one staff member had been diagnosed with COVID-19, *id.* at 17; *see also* Mot. at 16 (citing BOP, *COVID-19 Cases* (updated daily)[2] (noting one staff member at FCI Beaumont Low, and four staff members at neighboring FCI Beaumont Medium and one staff member at USP Beaumont, had tested positive for COVID-19)).  As of this writing, BOP reports twenty-eight inmates and one staff member at Beaumont Low as having contracted COVID-19. BOP, *COVID-19 Cases* (updated daily) (accessed August 5, 2020).

Defendant has served 55 months of his concurrent 84-month sentence, Opp'n, Ex. 1 ("Public Inmate Data"), ECF No. 471-1, at 2.  The BOP calculates defendant's projected release date as January 18, 2022, through application of good time credit, and defendant is eligible for home detention beginning June 18, 2021. *Id.* at 3–4 (noting as of filing of motion defendant has served four years, six months, twenty-three days (74.1 percent of statutory term)).

On April 1, 2020, defendant filed a request to the BOP for compassionate release, which he amended on April 8, 2020; in this request defendant explains he has liver disease, is a smoker, has had two treatments for hepatitis C while incarcerated and lives in a "cube with 3 other people" with roughly "2.5 feet of space" between them.  Mot., Ex. B ("Request to BOP"), ECF No. 460-1, at 3.  Additionally, defendant claims the treatments for hepatitis C render him immunocompromised and puts him at higher risk for COVID-19. *Id.*

On June 11, 2020, defendant filed the instant motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing his history of hepatitis B as well as hepatitis C make him particularly susceptible to developing serious complications from a COVID-19 infection and, paired with the outbreak at the facility where he is housed, "extraordinary and compelling reasons" warrant compassionate release. *Id.* at 14; *see* Mot., Ex. A ("Medical Records"),

---

[2] https://www.bop.gov/coronavirus/ (last accessed June 8, 2020).

3

ECF No. 469-1, at 4 (under seal).[3]  His medical charts on the one hand note vaguely that "defendant claims he was treated with Interferon and Ribavirin for 24 weeks while in the state prison system, but upon release was re-infected." *Id*.  But a clinical encounter note dated May 15, 2019 indicates, "Inmate [was] seen in [California Correctional Center (CCC)] for Hep C [medical diagnosis] back in 2005 and has received no treatment," *id.* at 6, and also documents that defendant was diagnosed with hepatitis C in 2007 and hepatitis B in 2010, *id*. at 8.

The warden at FCI Beaumont Low has not responded to defendant's request.  Mot. at 13.[4]  In its opposition, the government does not dispute that, while defendant's request is still pending, more than 30 days have elapsed since the warden received defendant's request.  Opp'n at 12.

II.     LEGAL STANDARD

Defendant brings his motion for release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court to modify a sentence under certain circumstances, namely after defendant meets certain exhaustion requirements.  *See* 18 U.S.C. § 3582(c)(1)(A).

In deciding whether to modify a sentence and grant compassionate release following exhaustion, as relevant here, a district court engages in a two-step process.  First, it

---

[3] Defendant submitted this record *in camera* and requested the court seal it due to the sensitivity of defendant's medical records.  The court granted the request to seal, ECF No. 463, and considers the document here.  The medical records document defendant's medical encounters at BOP Health Services on May 15, May 22, June 10, June 18, July 30 and August 15, 2019.  Medical Records at 1–11.

[4] 28 C.F.R. § 571.61(a) outlines procedures for filing a request for a motion for compassionate release with BOP and requires:

> The inmate's request shall at a minimum contain the following information:
>
> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
>
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

4

must consider the familiar 18 U.S.C. § 3553(a) factors applicable at the original sentencing, to the extent they remain applicable at the time a motion is brought.  18 U.S.C. § 3582(c)(1)(A).  These factors include, *inter alia*, the need for the sentence "to protect the public from further crimes of the defendant" and "to reflect the seriousness of the offense[.]" 18 U.S.C. § 3553(a).  Second, the court must find that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).[5]

The statute further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A).  In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody; the Guidelines were last amended November 1, 2018.  *See* U.S.S.G. § 1B1.13.  Since passage in December 2018 of the First Step Act (FSA),[6] which amended § 3582 to allow a defendant to file a motion for compassionate release directly with the court, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding.  In resolving the instant motion, this court, as it has in other similar cases, considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context.  *See United States v. Head*, No. 2:08-CR-00093-KJM-2, 2020 WL 3180149, at *1 (E.D. Cal. June 15, 2020) (collecting cases finding U.S.S.G. § 1B1.13 no longer limiting but considering the policy statement as guidance).  The court notes that, in addition to listing possible "extraordinary and compelling reasons," § 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community."  *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

---

[5] An alternative provision provides for consideration of a motion by a defendant who is 70 years or older, which is not applicable here.  18 U.S.C. § 3582(c)(1)(A)(ii).

[6] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

III.   DISCUSSION

  A.   Exhaustion

    Defendant must meet the exhaustion requirements of § 3582 before the court can consider his motion for compassionate release. As evidenced by the email correspondence attached to defendant's motion, defendant submitted a request for reduction in sentence well more than 30 days ago, on April 1, 2020. *See* Request to BOP at 1–3. The government does not dispute that the exhaustion requirement is satisfied. Opp'n at 12. The court finds the exhaustion requirement is met here, without adopting the government's reading of the statute with regard to the "lapse of 30 days" language in 18 U.S.C. § 3582(c)(1)(A). *See, e.g. United States v. Johnson*, No. 2:15-cr-00003-KJM, 2020 WL 2307306, at *4 (E.D. Cal. May 8, 2020) (discussing government's contention 30 days must elapse from the inmate's request regardless of a response by the warden). The court proceeds to consider the merits of the motion below.

  B.   "Extraordinary and Compelling Reasons"

    Defendant argues his history of chronic hepatitis B and hepatitis C makes him particularly susceptible to developing serious complications from a COVID-19 infection. Mot. at 15 n.13. Defendant also represents that due to his chronic hepatitis B and C he suffers from liver disease. Request to BOP at 3; Reply at 7 (arguing defendant's chronic history of hep B and C appears to have caused liver damage (citing Medical Records (sealed) at 10)). Plaintiff argues that the outbreak at FCI Beaumont Low, paired with defendant's medical history, constitutes "extraordinary and compelling reasons" warranting compassionate release. Mot. at 16.

    The government argues that while defendant has a history of hepatitis B and C, (1) his hepatitis B is resolved, (2) his hepatitis C is in remission, and (3) even if he does have a chronic health condition his illness does not rise to the level of an "extraordinary and compelling reason" as contemplated by the Sentencing Commission's policy statement to justify releasing him from the remaining 34.9 percent, or 24 months, of his sentence. Opp'n at 20–22. The court addresses these arguments below.

### 1. Hepatitis B and C

The government argues defendant's history of hepatitis B and C is not a condition specifically recognized by the CDC as a high-risk factor for COVID-19 complications. Opp'n at 22 (relying on CDC, *People Who are at Increased Risk for Severe Illness* [7] (explaining everyone is at risk for getting COVID-19 if they are exposed to the virus)). The government also asserts defendant's condition is not severe, because medical records from December 17, 2019 note defendant's hepatitis C is in remission and his hepatitis B has been resolved. Opp'n at 22, Ex. 2, ECF No. 478 ("Medical Records 2") (sealed) at 16. Additionally, the government emphasizes that when defendant was interviewed for his presentence investigation report in 2015, he himself said he was healthy and had a "chronic condition" without active symptoms. Opp'n at 11 (citing PSR ¶ 72, ECF No. 142).

Other district courts have found hepatitis B and C constitute medical conditions that increase the risk of severe illness from coronavirus warranting release, without necessarily clarifying whether the hepatitis is active, in remission or resolved. *See, e.g., United States v. Conner*, No. CR07-4095-LTS, 2020 WL 3053368, at *1 (N.D. Iowa June 8, 2020) (granting motion for compassionate release by petitioner with ongoing hepatitis B and C diagnosis); *see also United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (finding extraordinary and compelling reasons where BOP records indicated petitioner suffered in part from hepatitis B); *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *4 (S.D.W. Va. June 12, 2020) (granting compassionate release to prisoner suffering from a liver disease, hepatitis C and receiving treatment while at FCI Elkton).

The medical records defendant submits corroborate his condition. Medical Records (sealed) at 6. Defendant's history of hepatitis C was first noted in April 2005 when he was seen in CCC for a medical diagnosis and he received no treatment. *Id*. at 8. He received his formal diagnosis of hepatitis C in 2007 and of hepatitis B in 2010. *Id*. As part of the same records, defendant's more recent lab report from May 22, 2019 shows his liver enzymes, alanine

---

[7] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html.

transaminase (ALT) and aspartate transaminase (AST) are deemed "high," *id.* at 10, which often indicates inflammation or damage to cells in the liver associated with hepatitis C, *see* Mot. at 24 n.37 ("Inflamed or injured liver cells leak higher than normal amounts of certain chemicals, including liver enzymes, into the bloodstream, elevating liver enzymes on blood tests." (quoting Mayo Clinic, *Symptoms [of] Elevated Liver Enzymes* (last updated March 5, 2020)[8]).  While the government asserts defendant's hepatitis C is in remission, *see* Medical Records 2 at 16 (sealed), on this record there is sufficient evidence to find defendant has chronic hepatitis C, and notwithstanding the medical records' use of the words "resolved" and in "remission," there is no evidence he has fully recovered from what is labeled a chronic condition.  *See United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *6 (S.D. Iowa May 21, 2020) (granting compassionate release where defendant's medical records and presentence investigation report showed he suffered from chronic hepatitis C for decades, government did not dispute the health risks, but argued defendant was cured in 2018); *United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *6 (S.D. Iowa May 21, 2020) (noting not at all clear one's immune system simply rebounds from a long-term hepatitis C infection).[9]

---

[8] https://www.mayoclinic.org/symptoms/elevated-liver-enzymes/basics/definition/sym-20050830.

[9] The court's observation in *Stephenson* is supported by reputable public health information.  The court takes judicial notice under Federal Rule of Evidence 201(c)(1) of information provided by the CDC regarding hepatitis B and hepatitis C suggesting one does not fully recover from either condition.  In answering the question "What is hepatitis B?," the CDC's website explains,

> Although people with lifelong hepatitis B usually don't have symptoms, the virus causes liver damage over time and could lead to liver cancer. There is no cure for hepatitis B, but treatment can help prevent serious problems.

https://www.cdc.gov/vaccines/parents/diseases/hepb.html.  Regarding hepatitis C, while the CDC on the hand says this condition can be treated and in a number of cases cured with treatment, it defines and explains the condition as follows:

> a liver disease caused by the hepatitis C virus. When someone is first infected with the hepatitis C virus, they can have a very mild illness with few or no symptoms or a serious condition requiring

Because there is currently no treatment for COVID-19, the CDC recommends individuals with liver disease, which can include disease caused by hepatitis B and C, protect themselves from COVID-19, by, *inter alia*: "keep[ing] space between yourself and others," "stay[ing] home," and "[c]lean[ing] your hands often by washing with soap and water or using an alcohol-based sanitizer." CDC, *How to Protect Yourself & Others* (last updated April 24, 2020).[10] The recommendations emphasize that "[k]eeping distance from others is especially important for people who are at higher risk of getting very sick." *Id.*; *see* Mot. at 15 n.13 (citing Centers for Disease Control and Prevention (CDC), *What to Know About Liver Disease and COVID-19*[11] (explaining people with chronic liver disease, including hepatitis B and C "might be at higher risk for severe illness from COVID-19")); *id.*, at n.16 (quoting CDC, "People with liver disease should take the same preventive actions being taken by people with other underlying conditions to avoid getting sick with or spreading COVID-19").

---

hospitalization. For reasons that are not known, less than half of people who get hepatitis C are able to clear, or get rid of, the virus without treatment in the first 6 months after infection.

Most people who get infected will develop a chronic, or lifelong, infection. Left untreated, chronic hepatitis C can cause serious health problems including liver disease, liver failure, liver cancer, and even death.

https://www.cdc.gov/hepatitis/hcv/HepatitisCOverview.htm. Regarding hepatitis C symptoms, the CDC notes

People with chronic hepatitis C can live for years without symptoms or feeling sick. When symptoms appear with chronic hepatitis C, they often are a sign of advanced liver disease.

*Id.*

[10] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html ("People with Underlying Medical Conditions" links to page identifying "Liver disease" as a condition that might put a person at increased risk; "Liver disease" links to information including statistics on liver disease caused by viral hepatitis).

[11] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html.

The court finds defendant's medical condition puts him at high risk of suffering serious, possibly life-threatening, medical consequences if he contracts COVID-19.

### 2. Extraordinary and Compelling

As to the government's third argument, defendant contends his situation satisfies U.S.S.G. § 1B1.13 cmt n.1(A)(ii), which provides that a reduction in sentence is warranted if defendant is "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Mot. at 24.

Despite what may be the BOP's best efforts to control the spread of COVID-19, as detailed by the government in its opposition, *see* Opp'n at 12–15, the record before the court demonstrates defendant cannot comply with the CDC's recommendations while incarcerated at FCI Beaumont Low. First, as signaled above, the identified cases of COVID-19 at FCI Beaumont Low among the inmate population where defendant is housed are increasing, with spread at the neighboring institutions as well. *See* BOP, *COVID-19 Cases* (updated daily).[12] At the time defendant filed his motion, the five inmates and one staff member had been diagnosed with COVID-19 at FCI Beaumont Low. *Id.* (accessed June 8, 2020). By July 1, 2020, fifteen inmates at Beaumont Low had tested positive for COVID in defendant's facility. *Id.* (accessed July 1, 2020); Reply at 5 (noting BOP's website reveals as of June 28, 2020, six BOP staff members at FCI Beaumont Medium and two BOP staff members at Beaumont USP also have current active diagnoses). In other words, in approximately two weeks there was a 33 percent increase in reported infections at FCI Beaumont Low. As of the date of this order, an additional thirteen inmates have been infected for a total of twenty-eight inmates and one staff member at FCI Beaumont Low who have tested positive for COVID-19. BOP, *COVID-19 Cases* (updated daily) (accessed August 5, 2020). In other words, the trend line is still going up. Second, defendant certifies he lives in a small "cube" at FCI Beaumont Low with "three other prisoners," which

---

[12] https://www.bop.gov/coronavirus/ (reporting four staff members at FCI Beaumont Medium and one staff member at USP Beaumont, have tested positive for COVID-19).

10

provides only about "2.5 feet" of space between each of them.  Request to BOP at 3; *see* Mot. at 29 (contrasting FCI Beaumont Low, where approximately 1,466 prisoners are living in 12 dormitory buildings, with corrections facilities allowing for more physical distancing than at FCI Beaumont Low); Reply at 3 (citing to *Federal Defenders of New York* (graph illustrates "COVID-19 infection rate in the BOP is more than six times higher than in the general population of the United States") (last accessed June 27, 2020)).[13]  As defendant notes, the CDC recognizes the difficulty of preventing the introduction of COVID-19 into prison facilities:

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members . . . admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.

*Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (last updated May 7, 2020)[14]; Mot. at 21.  The unrebutted record supports defendant's allegation that physical distancing is not achievable in his particularized living quarters at FCI Beaumont Low, meaning he is likely at some point to be exposed to COVID-19.

In its opposition, the government points to information on procedures the BOP purportedly is implementing generally systemwide, Opp'n at 12–15, noting administrative options inmates can pursue through the BOP itself, *id.* at 15–17 (identifying "more flexible remedies better suited to a temporary (if dire) pandemic as opposed to a permanent reduction of a sentence," including an inmate request for transfer to home confinement or temporary furlough from custody, in addition to compassionate release), and BOP memoranda suggesting the BOP is "urgently reviewing all inmates" to determine eligibility for home confinement and "increasing

---

[13] https://federaldefendersny.org/

[14] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

resources to 'review and make appropriate decisions as soon as possible,'" *id.* at 16 (quoting Attorney General, Memorandum for Director of BOP Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020)[15]). No evidence in the record, however, suggests these measures or options are proving effective in preventing particularized COVID-19 exposure to defendant as a resident of FCI Beaumont Low.

The court finds defendant's living conditions and the situation at FCI Beaumont Low make it difficult if not impossible for defendant to protect himself from contracting COVID-19 by following the CDC guidelines applicable to his compromised physical condition. Moreover, defendant's combination of medical conditions, including chronic hepatitis B and C and evidence of liver damage, present the kind of comorbidities that exacerbate his risk of contracting COVID-19. *See United States v. Bradley*, No. 2:14-CR-00293-KJM, 2020 WL 3802794, at *5 (E.D. Cal. July 7, 2020) (finding defendant's combination of serious health conditions weighs heavily in favor of sentence reduction); CDC, *What can people with hepatitis B or hepatitis C do to protect themselves from COVID-19?*[16] (last accessed August 5, 2020) (explaining people with hepatitis B or hepatitis C need to take necessary precautions to protect against COVID-19).

In sum, "extraordinary and compelling reasons" support granting defendant compassionate release, if he is not a danger to the community.

C. Sentencing Guidelines and Danger

The Sentencing Guidelines advise that "the court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *Esparza*, 2020 WL 1536155, at *3 (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A).

---

[15] Available at https://www.justice.gov/file/1266661/download.

[16] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html.

1    Defendant's crime is a serious one, but it is nonviolent. Reply at 13. Defendant has served over half of his 84-month sentence, and, if good time credits are applied, he is projected to be released in roughly two years. *See* Mot. at 30. The government does not dispute that defendant has an exemplary record while in prison, with no disciplinary incidents. Opp'n at 23–24. Importantly, defendant has shown significant evidence of rehabilitation, including by taking and passing the GED test and completing eighteen educational courses. Mot., Ex. C ("Summ. Reentry Plan"), ECF No. 460-2, at 1–2 (as of February 5, 2020). He has been successful working for BOP's food service program and has received satisfactory work reports. *Id.* at 1; *see United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *11 (C.D. Cal. May 21, 2020) (finding evidence of defendant's rehabilitation weighed in favor of granting motion for compassionate release and any risk of danger associated with sentence reduction could be further mitigated by supervised release); *see generally* Summ. Reentry Plan.

In light of the foregoing, the court finds defendant does not present a risk of danger to the community as articulated in 18 U.S.C. § 3142(g). Accordingly, the court reduces defendant's sentence as described below, because extraordinary and compelling reasons warrant such a reduction.

IV.   CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release is GRANTED as follows:

The court modifies defendant's sentence of incarceration to time served, with the added special condition that for twelve-months defendant be subject to home confinement with defendant's bearing the attendant cost of location monitoring.

This order resolves ECF No. 460.

IT IS SO ORDERED.

DATED: August 5, 2020.

CHIEF UNITED STATES DISTRICT JUDGE

13